STAPEES, J.
delivered the opinion of the court.
*The note in controversy was executed by parties residing in Rocking-ham county, and is payable at the First National Bank of Harrisonburg, Virginia. It is, however, founded upon transactions which occurred in the state of Maryland. It seems that John Bowman, Jr., one of the defendants, being in want of money, in August 1867, went to the city of Baltimore with a negotiable note for $3,500, blank as to date and place of payment, but signed by himself and endorsed by certain persons residents of Virginia. This note, after some negotiation, he sold to Daniel Miller & Co. of that city at a discount of one and one- fourth per cent, per month. The proper date was inserted, and the place of payment fixed at the National Exchange Bank of Baltimore. The note was not paid at maturity, and another was given in renewal in December 1867 for $3,602.68, with the same endorsers, and payable at the same place. Upon this note the sum of $550 in cash was paid by Bowman on the 25th April, 1868; and a new note bearing the same date was executed by him and his endorsers to meet the balance due Daniel Miller & Co. Efforts were made by Bowman’s agent in Baltimore to sell this note in market; but they were unsuccessful; and it was finally agreed that Daniel Miller & Co. should take the note at a discount of one and one-fourth per cent. This was done, and the nett proceeds of sale were applied in discharge of the amount due Daniel Miller & Co., leaving a small balance due them.
This last mentioned note was not paid at maturity, or at any other time, but remained in the possession of Daniel Miller & Co. until the early part of the year 1869, when they sent it and all the notes and papers connected with the Bowman loan, together with a statement of the amotint due them to a friend residing *at Harris-onburg, with a request that he would take Bowman’s note for what was due, endorsed by the same parties as were on the previous notes. They gave no instructions in regard to the place of payment, but they enclosed two blank notes, one payable at the National Exchange Bank of Baltimore, and the other blank as to the place of payment. One of these was taken by Bowman, the word “Baltimore,” at the beginning of the note, erased, and Rockingham county was inserted. It was then filled up with the amount due Daniel Miller & Co., made payable at the bank at Harrisonburg, endorsed by the same parties, delivered to the agent of Daniel Miller & Co., and by him transmitted to his principals in Baltimore.
It is not claimed that the writing contains any stipulation for the payment of illegal interest, except so far as it is derived from the antecedent transactions of the parties. The defendant’s pretension is, that the notes sold to Daniel Miller & Co., in Baltimore, were negotiated at a usurious rate; and that this taint adhered to and was carried into all the succeeding notes, including the one now under consideration; and this note having been executed in Virginia, and payable here also, is a Virginia contract, to be determined by the Virginia law's upon the subject of usury.
This is the real issue between the parties. In considering it I do not propose to follow the learned counsel in their elaborate discussions of the various propositions supposed to be involved in the case. The whole subject lies in a very narrow compass, and may be disposed of upon a few well established principles of law.
In the first place, the rule is well settled, that the validity of a contract is to be determined by the laws of the country where it is made and to be executed. *If valid there it is recognized in every other state as of binding force and obligation; unless, indeed, it be immoral, contrary to the public policy of the foreign state, or prejudicial to the rights and feelings of its citizens. Andrews v. Pond, 13 Peters R. 65, 78. On the other hand, if it is declared by the court of the country where made and to be executed to be void, it will be condemned by the tribunals of every country. These principles of law are almost universally recognized. That contracts for the loan of money are directly within their influence does not admit of a question. If valid where made and to be executed, they are valid everywhere, and will be enforced by all foreign tribunals. Story Conflict of flaws, 3 291.
In view of these principles, it becomes important to enquire how the transactions and notes of the parties are affected by the Maryland laws relating to usury. I mean the notes executed in the city of Baltimore anterior to the one in controversy. That *398 these were Maryland contracts, to be governed and their validity determined by Maryland statutes, is'too plain for argument. If authority is desired on this point, it may be found in Fant et als. v. Miller & Mayhew, 17 Gratt. 47.
What then is the Maryland law' upon the subject of usurious contracts? Under its operation as found in this case a contract or evidence of debt, although tainted with usury, is not null and void; but it is a valid contract upon which, an action may be maintained for the recovery of the principal and interest actually due on said contract or evidence of debt; and it is only void to the extent of the usurious interest. And it is provided that a person who seeks to avail himself of the defense of usury shall plead the same specially, and set out the true amount due, principal *and interest, at six per cent. ; and thereupon judgment is to be rendered in favor of the plaintiff for the amount of such principal and interest.
It will thus be seen that under the Maryland laws usurious contracts are not avoided under any circumstances, but are valid securities to the extent of the principal, and six per cent, interest. This is the settled rule of construction. Baugher et als. v. Nelson, 9 Gill’s R. 299.
It is clear, therefore, that the notes of the defendant executed in Maryland, and payable there, were valid securities; that actions could have been maintained thereon, and recoveries had in the courts of that state if the defendants could have been served with process there, and they could only have been relieved of paying the usurious interest.
Are the plaintiffs in a worse condition by the execution of the note in controversy? That note changes the place of payment, but it does not otherwise affect the rights and obligations of the parties. It is not a novation of the old debt; it is not the creation of a new one; it'is simply a continuation of the old one. Concede that it is a Virginia contract, it is, nevertheless, a contract to pay a valid debt to the extent of the principal, and six per cent, interest, with a right on the part of othe defendants to escape the payment of the excess.
Suppose Daniel Miller & Co. had sent the last note executed in Baltimore, that of the 25th April, 1868, to Rockingham county for suit, instead of renewal, I imagine there can be no doubt of their right of recover}' thereon. It cannot be that the execution of a new note, for the amount of an old one, can make the debt or the security invalid simply because the place of payment is changed. No well considered case can *be found giving countenance to such an idea. The case of Dewar v. Span, 3 T. R. 425, has been relied on as an authority for the appellant. In that case a bond had been executed at the island of St. Christopher, where the interest was six per cent. A new bond was afterwards executed in England as a substitute for the old one, providing for the payment of six per cent. interest also. It was held, that as the new bond was an English contract, it was void for usury. The reason is apparent. The new bond provided not merely for the old debt, but it contained an express stipulation for the payment of six per cent, thereon in the future, which was not allowable in England. No one pretends that a bond for the payment of the aggregate of principal and interest upon the old debt, according to the rates allowed at the island of St. Christopher, would have been invalid. It was the insertion of a stipulation to pay six per cent, in England that vitiated the obligation. And this is in harmony with the doctrine laid down by Judge Story in his “Conflict of Laws;” and that is, “If a debt is contracted in one country (New York), and afterwards, in consideration of further delay, the debtor in another country (Virginia) enters into a new contract for the interest allowed in the country where the debt was contracted, (New York), but higher than in the country where the contract is, made, it is held that the contract is invalid. And so in the present case, if the note in controversy had contained an express stipulation to pay a higher rate of interest than is allowed by our laws upon the amount of the Maryland debt, such a stipulation would probably have been invalid. But, as already seen, it does nothing of the kind; it is a mere promise to pay the debt already subsisting, and bears of course only the legal rate of interest.
*The case mainly relied upon as in conflict with this position is that of Turpin v. Povall et als., 8 Leigh 93. There is certainly nothing in the decision itself that can be so construed; but Judge Tucker, in the course of his opinion, gave expression to certain views which were not called for by the case, and which, if not carefully considered, are well calculated to produce erroneous impressions.
The facts briefly stated, ai-e, that Povall, a resident of Pennsylvania, made a loan to Johnson, of Virginia, of eight thousand dollars. The loan was made and the money advanced in Philadelphia, though this is not very clear, the Obond, was however, taken in Virginia by the agent of Povall, with Turpin as surety. The contract was to pay ten per cent, interest, which, it seems, was illegal by the law of Pennsylvania ; but under that law the debtor was entitled to relief only -against the usurious excess, while under the Virginia law the entire debt was forfeited. The great question was therefore whether it was a Virginia or a Pennsylvania contract. The court held that it was a Virginia contract. And the reason assigned was that a new party was introduced; and by the execution of the new bond with the new party, the old contract was annihilated. But Judge Tucker in coming to this conclusion, admitted that he was by no means satisfied with the reasoning or the authorities upon this point. He said the new contract was obviously executed in reference to the law of Pennsylvania, where the loan was made; *399 and where that is the case it would seem that the contract is to be governed by the law of the place of reference, and not by that of the place of execution.
In the present case no new party was introduced. The maker and endorsers of the note were the same. *The new note was not a novation of the debt, but a mere renewal and a continuation of the same liability. And although the place of payment was changed for the mere convenience of the parties, it is obvious that the contract was made with reference to the laws of Maryland, where the loan was made, and where all the transactions occurred.
This view is fully sustained by the case of Jacks v. Nichols, 1 Selden New York R. 178. There a loan was made between parties in New York, and notes given; when due they were given up upon an arrangement for further time, and new notes executed to the lender, who was then in Connecticut. In actions upon these notes it was held that it was still a New York contract, not changed by the execution of the new notes. They constituted a mere renewal, and did not change the nature of the debt or the liability of the parties.
There is another material difference between the present case and that of Turpin v. Povall. In the latter case there was an express stipulation to pay a future interest of ten per cent. In the present case the note in controversy embraces only the amount of the debt as contracted in Maryland, including the legal interest that had accrued up to the time of its execution.
It is said, however, that conceding the present note was executed with reference to the Maryland laws, it was in violation of those laws and can derive no countenance or support from them. In support of this view, the opinion of Judge Tucker, already referred to, is much relied on. He does say that a contract made in any state, contrary to its laws, must, in every other state be looked upon as uninfluenced by them, and must, therefore, always fall within the influence *of the lex fori. This, however, was a mere obiter dictum of Judge Tucker’s, not called for by anything in the case before him. Whether the observation be or not correct in the comprehensive terms used, it has no application to the present case. It is not an offence under the Maryland law to take usury, as it is here. The contract is not thereby vacated as here. The taint does not affect the instrument as here. On the contrary, the security is valid; the debt perfectly secure to the extent of principal and interest; though the debtor, under the proper pleading, may be relieved of the excess. Now, concede it is a violation of that law to demand more than six per cent. ; is it possible that when a suit is brought here upon a Maryland contract executed upon the faith of their statutes, we are to apply our laws, and declare the whole contract null and void, in the very teeth of the Maryland statutes, which affirm the validity of the contract to the extent of principal and lawful interest? Such a doctrine is in violation not merely of the principles of the comity of states, but of the plainest maxims of equity and justice. I have already shown, or attempted to show, that the execution of the note in controversy does not vary the rights and obligations of the parties, and the courts will consider it a mere acknowledgment of the Maryland contract, and given with reference to the rights of the parties under the laws of that state.
Upon this point I do not deem it necessary to cite any other authority except the case of Fant et als. v. Miller & Mayhew, 17 Gratt. 47, already mentioned. I think that decision fully sustains most of the views I have presented.
It only remains to notice one other ground taken by the counsel of the defendants. It is insisted that *the court ought to have abated the usurious excess, and. given the plaintiff a judgment for his principal, and six per cent, interest. I do not mean to discuss the question whether the Virginia courts can administer any remedies other than those afforded by our own laws. In examining into contracts entered into in foreign states, it may be questioned whether the courts here can do more than affirm the validity or invalidity of such contracts. There is a strong authority for the proposition that they will not undertake to administer the peculair remedies which the policy of a foreign state may prescribe for its citizens in its own domestic forums.
The case of Walriss v. Pierce, 32 New Hamp. R. 560; Sherman v. Gassett, 4 Gilman’s R. 521; 7 Metc. R. 14, are decisions affirming this doctrine. It is not necessary, however, nor is it intended, to express any opinion upon this point. It is sufficient to say, that if the defendants desired the special relief allowed by the Maryland statutes, it was incumbent upon them to put the matter in issue by proper pleadings. This is required by the statute of that state, and this seems to have been the view of this corirt in Fant et als. v. Miller & Mayhew. In this case the defendants put in no such plea, nor did they ask the court to abate the usurious interest, or to instruct the jury to do it. It does not appear the point was made, or even alluded to, in the court below. It is certainly too late to raise it for the first time here. It is worthy of observation, that while the note is for $3,048.75, the judgment is for $2,888.14, a difference of $160.61. It would seem, therefore, that the plaintiff has voluntarily released the usurious excess, or that the court and jury have refused to allow him more than his principal and '"legal interest. All ground for complaint in this particular is of course removed.
There are other errors assigned in the petition for an appeal, but they relate to the form of the proceedings exclusively; they are clearly not tenable, and I do not deem it necessary to consider them.
Upon the whole, I think the judgment should be affirmed for the reasons already stated.
Judgment affirmed.

See Pant v. Miller, 17 Gratt. 47 and monographic note on “usury” appended to Coffman v. Miller, 26 Gratt. 698.